# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## AT CINCINNATI DIVISION

IN RE:

RACHEL A EVERETT

DEBTOR

IN PROCEEDINGS UNDER CHAPTER 7

CASE NO: 19-10589

JUDGE: BETH A. BUCHANAN

## MOTION OF NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER FOR RELIEF FROM STAY FOR REAL PROPERTY LOCATED AT 4520 HILLSIDE AVENUE, CINCINNATI, OH 45233

Nationstar Mortgage LLC d/b/a Mr. Cooper (the "Movant") in this proceeding under Chapter 7 of the Bankruptcy Code, and pursuant to 11 U.S.C. §362(d) of the Bankruptcy Code, Rules 4001, 9013 and 9014 of the Bankruptcy Rules and Local Bankruptcy Rule 4001-1, respectfully moves this Court for relief from the automatic stay imposed by 11 U.S.C. §362(a) in order to proceed with a state court proceeding to foreclose on the property located at 4520 Hillside Avenue, Cincinnati, OH 45233. The grounds upon which this Motion is made are more fully set forth in the attached Memorandum in Support.

## MEMORANDUM IN SUPPORT

1.  The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2). The venue of this case and this Motion is proper under 28 U.S.C. §§1408 and 1409.

2.  On September 17, 2007, Rachel A Everett ("Debtor") obtained a loan from CitiMortgage, Inc., in the amount of $78,000.00. Such loan was evidenced by a Promissory Note dated September 17, 2007 (the "Note"), a copy of which is attached as Exhibit A.

3.      Nationstar Mortgage LLC d/b/a Mr. Cooper directly or through an agent has possession of the promissory note and held the note at the time of the Movant's Motion for Relief from Stay.  The promissory note has been duly indorsed.

4.      To secure payment of the Note and performance of the other terms contained in it, the Debtor, Rachel A Everett, executed a Mortgage dated September 17, 2007 (the "Mortgage").  The Mortgage granted a lien on the real property (the "Property") owned by the Debtor, Rachel A Everett, located at 4520 Hillside Avenue, Cincinnati, OH 45233 and more fully described in the Mortgage.

5.      The lien created by the Mortgage was duly perfected by the recording of the Mortgage in the office of the Hamilton County Recorder on September 19, 2007.  A copy of the Mortgage is attached as Exhibit B.  The lien is the first and best lien on the property.

6.      The Note and Mortgage are currently held by Nationstar Mortgage LLC d/b/a Mr. Cooper.

7.      The value of the Property is $95,810.00, per the Hamilton County Auditor.

8.      As of February 28, 2019, there is currently due and owing on the Note, the outstanding principal balance of $79,172.94, plus interest accruing thereon at the rate of 4.5% per annum from March 1, 2018.

9.      Other parties known to have an interest in the Property are as follows:

   a.  Hamilton County Treasurer, for tax purposes.

10.     The Movant is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1) and/or 362(d)(2) for these reason(s):

   a.      Per the Note and Mortgage, payments are applied to the last month due. Based upon the foregoing, Debtor has failed to make periodic payments to Movant since April 1, 2018, which unpaid payments are in the aggregate amount of $9,111.45 through February 28, 2019.

11.     Movant has completed the Relief From Stay/Adequate Protection Exhibit and Worksheet

-- Real Estate.

12.     This Motion conforms to the standard form adopted in this District except as follows:

**Clarification of language in Paragraph 3**

WHEREFORE, Movant prays for an Order from the Court granting Movant relief from

the automatic stay of 11 U.S.C. §362 of the Bankruptcy Code to permit Movant to proceed under

law and for such other and further relief to which the Movant may be entitled.

Respectfully Submitted,

/s/ Matthew Murtland
Shapiro, Van Ess, Phillips & Barragate, LLP
Matthew Murtland (OH-0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: mmurtland@logs.com

**Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.**

## ADDENDUM

Nationstar Mortgage LLC d/b/a Mr. Cooper services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note.  Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

.

## **CERTIFICATE OF SERVICE**

I certify that on March 6, 2019, copies of the foregoing were served by mailing the same by ordinary U.S. Mail, postage prepaid, and/or electronically as permitted by local rule, to the persons listed below.

**Served by Regular U.S. Mail**

Rachel Everett
a/k/a Rachel A Everett
4520 Hillside Ave
Cincinnati, OH 45233

**Electronic Mail Notice List**

John W Rose
35 East Seventh Street
Suite 610
Cincinnati, OH 45202

Eric W. Goering
220 West Third Street
Suite 399
Cincinnati, OH 45202

Office of the U.S. Trustee
36 East Seventh Street
Suite 2030
Cincinnati, OH 45202

/s/ Matthew Murtland_____
Shapiro, Van Ess, Phillips & Barragate, LLP
Matthew Murtland (OH-0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: mmurtland@logs.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## CINCINNATI DIVISION

| | |
|---|---|
| IN RE: | IN PROCEEDINGS UNDER CHAPTER 7 |
| RACHEL A EVERETT | CASE NO: 19-10589 |
| Debtor | JUDGE: BETH A. BUCHANAN |

---

## RELIEF FROM STAY/ADEQUATE PROTECTION
## EXHIBIT AND WORKSHEET – REAL ESTATE
## (For use as required by LBR 4001-1(a)(1))

---

Real property address which is the subject of this motion:
4520 Hillside Avenue
Cincinnati, OH 45233

**DEBT/VALUE REPRESENTATIONS:**

Total indebtedness of the debtor(s) at the time of filing the motion
for relief from stay (not to be relied upon as a payoff quotation)  $ _____ 92,414.81 _____
Movant's estimated market value of the real property  $ _____ 95,810.00 _____
Source of the estimated valuation  <u>Hamilton County Auditor</u>

**STATEMENT OF ARREARAGE:**

(1)  As of petition filing date:  $ _____ N/A _____
Amounts paid after the date of filing to be applied to the prepetition
default:  $ _____ 0.00 _____
(2)  Postpetition:  $ _____ 9,111.15 _____

(3)  Monthly payment amount:  $ _____ 828.59 _____

(4)  Date of Last Payment    April 20, 2018
(5)  Amount of Last Payment  $ _____ 825.55 _____

# of payments due postpetition    <u>    n/a    </u>    (through payment due February 1, 2019)

# of payments received postpetition    <u>    n/a    </u>

# of payments in default postpetition    <u>    n/a    </u>

Total amount of postpetition payments currently in default:  $ _____ 9,111.45 _____
  + Postpetition late charges  $ _____
  - Suspense Balance  $ _____ (0.30) _____

| | | | |
|---|---|---|---|
| Foreclosure title work | $ | 0.00 | |
| Filing fee | $ | 0.00 | |
| Skip trace | $ | 0.00 | |
| Document acquisition costs | $ | 0.00 | |
| Service Process server | $ | 0.00 | |
| Escrow Shortage | | | |
| Hazard Insurance | $ | 0.00 | Dates: |
| Taxes | $ | 0.00 | Dates: |
| Appraisal | $ | 0.00 | |
| Property Inspection | $ | 0.00 | |

=    Total Postpetition Arrearage            $          9,111.15

**OTHER LOAN INFORMATION:**

Date of the Loan           September 17, 2007

Current Interest Rate       4.5%

Money paid to and held by the mortgagee but not applied to the loan $0.30; if held in the form of checks, balance of such checks $0.00, and identity of holder of the checks n/a.

**REQUIRED ATTACHMENTS TO MOTION:**

(a) In a Chapter 13 case, a postpetition payment history.

(b) In all cases, copies of documents which indicate movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the real estate mortgage should be attached. The mortgage should bear date stamps reflecting the recording date together with recording references reflecting the recordation of the mortgage with the appropriate county official. If the subject property is registered land, movant shall attach a copy of the registered land certificate or other documentation reflecting that the mortgage was memorialized as a lien on the registered land certificate.

This Exhibit and Worksheet was prepared by:

Respectfully Submitted,

/s/ Matthew Murtland
Shapiro, Van Ess, Phillips & Barragate, LLP
Matthew Murtland (OH-0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: mmurtland@logs.com

**EXHIBIT A**

# NOTE

September 17, 2007
[Date]

Cincinnati
[City]

Ohio
[State]

4520 HILLSIDE AVENUE, CINCINNATI, OH  45233-1613

[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 78,000.00     (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of 7.875          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on November 1, 2007          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on October 1, 2037          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63368-2240

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 565.55

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Wolters Kluwer Financial Services     Form 3200 1/01
VMP ®-5N (0207).01
Page 1 of 3          Initials _____

CitiMortgage 3.2.11.06 V9

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials:
CitiMortgage 3.2.11.00 V9

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Rachel A. Everett                -Borrower

*(Sign Original Only)*

Pay to the order of

Without recourse on us CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc
D/B/A Citicorp Mortgage, Inc in NM, on it's own
behalf or as Attorney-in-Fact for Citibank FSB;
Citibank (New York State); Citibank (Nevada), NA;
Citibank, NA F/K/A Citibank (West) FSB

_____
Janet L. Syms, Senior Vice President
CitiMortgage, Inc.

Return To:

CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

Rebecca Prem Groppe
Hamilton County Recorders Office
Doc #: 07-0136208 Type: MT
Filed: 09/19/07 03:14:16 PM $140.00
Off.Rec.: 10654 01685 F W44 16 376

D1065401685FE

## EXHIBIT B

PF-3749
540-8-010,32,43

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 100011520045668607

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 17, 2007
together with all Riders to this document.
(B) "Borrower" is Rachel A. Everett, Individual

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York
Lender's address is 1000 Technology Drive, O' Fallon, MO 63368-2240

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3036 1/01

VMP -6A(OH) (0810)
Page 1 of 15          Initials: R.E.
VMP Mortgage Solutions, Inc.

CitiMortgage 3.2.11.06 V9

10654  1685

(E) "Note" means the promissory note signed by Borrower and dated   September 17, 2007
The Note states that Borrower owes Lender  Seventy Eight Thousand

Dollars
(U.S. $ 78,000.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  October 1, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule "A" |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

VMP®-6A(OH) (0510)

Initials: RE

Page 2 of 15

Form 3036   1/01
CitiMortgage 3.2.11.06 V9

10654   1686

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
County                                          of HAMILTON                                          :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

See Attached Schedule A

Parcel ID Number:                                          which currently has the address of
4520 HILLSIDE AVENUE                                          [Street]
CINCINNATI                                          [City], Ohio  45233-1613          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.



VMP-6A(OH) (0810)                    Page 3 of 15          Initials          Form 3036  1/01
                                                            CitiMortgage 3.2 11.06 V9

Situate in Section 16, Delhi Township, Hamilton County, State of Ohio, and
being more particularly described as follows:

Beginning at a point in the center line of Hillside Avenue at the southwest
corner of Lot 34 of P. Zinn's Subdivision of Anderson Ferry as recorded in
Plat Book 4, page 296, Records of Hamilton County, Ohio; thence south 69
degrees 07' east a distance of 44.25 feet to a point; thence south 69 degrees
24' east a distance of 68.96 feet to a spike; which spike is the true place of
beginning of this description; thence on a line parallel to and 93 feet east
of the west line of said Lot 34 of P. Zinn's Subdivision of Anderson Ferry,
north 25 degrees 07' east a distance of 102.18 feet to an iron pipe; thence
south 32 degrees 37' east a distance of 170.50 feet to a pike in the center
line of Hillside Avenue; thence north 69 degrees 24' west a distance of 144.32
feet to a spike, the place of beginning, forming a triangular tract of land.

Avenue, 93 feet and extending northwardly to the top of the hill and known as
the west 93 feet of Lot No. 34 of Peter Zinn's Subdivision of Anderson Ferry,
shown in Plat Book 4, pages 296 and 297 of the Hamilton County, Ohio Plat
Records.

TRACT III: 540-80-32 51 
Situate in Section 16, Town 3, Fractional Range 1, Miami Purchase, Delhi
Township, Hamilton County, State of Ohio, and being the easterly portion of
Lot No. 6 North of Hillside Avenue, of the Trustees Secion Subdivision,
recorded in Deed Book No. 76, page 311, Hamilton County Records, and said
portion being more particularly described as follows:

Beginning at a point where the center line of Hillside Avenue intersects the
west line of Peter Zinn's Subdivision, a plat of said subdivision recorded in
Plat Book 4, pages 296 and 297, Hamilton County Records; thence northwardly
along the west line of Peter Zinn's Subdivision, seven hundred and thirty-nine
and 25/100 (739.25) feet to the north-east corner of said Lot No. 6; thence
in a northwestwardly direction along the north line of said Lot No. Six (6),
one hundred and twenty-nine (129) feet; thence southwardly parallel to the
west lien of Peter Zinn's Subdivision, eight hundred and eighteen and 95/100
(818.95) feet to a point in the center line of Hillside Avenue; thence
Eastwardly along the center line of Hillside Avenue one hundred and ten (110)
feet to the place of beginning.

10654   1688

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

-6A(OH) [0610]

Page 4 of 15

Initials: $R.E.$

Form 3036   1/01
CitiMortgage 3.2.11.06 V9

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to

-6A(OH) (0510)

Initials RE

Page 6 of 15

Form 3036   1/01
CitiMortgage 3.2.11.06 V9

prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any


VMP-6A(OH) (0510)                                    Page 6 of 15                                    Form 3036  1/01
                                                                                    CitiMortgage 3.2.11.08 V9

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source



Page 9 of 15

Inkials  R.E.

Form 3036  1/01
CitiMortgage 3.2.11.06 V8

of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

-6A(CH) (0510)                    Page 9 of 15          Initials RE          Form 3036  1/01
                                                        CitiMortgage 3.2.11.06 V9

10654  1694

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

 -6A(OH) (0810)

Page 10 of 16

Initials RE c

Form 3036  1/01
CitiMortgage 3.2.11.06 V3

10654  1695

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



-6A(OH) (0510)                Page 11 of 15                Initials PE.

Form 3036   1/01
CitiMortgage 3.2.11.06 V9

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

VMP2-6A(OH) (0510)                    Page 13 of 16          Initials: RE

Form 3036   1/01
CitiMortgage 3.2.11.06 V9

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Certain Other Advances. In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned,

Initials

10654   1698

advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office,

County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                                                          -Borrower
                                                         Rachel A. Everett
                                                         (Sign Original Only)

_____

-6A(OH) (0510)                         Page 14 of 15                    Form 3036   1/01
                                                                       CitiMortgage 3.2.11.06 V8

10654  1699

STATE OF OHIO,                    *HAMILTON*     County *ss*:

This Instrument was acknowledged before me this   *17TH*   day of   *SEPTEMBER 2007*   by

*RACHEL A. EVERETT, UNMARRIED*

My Commission Expires:



Notary Public

RHONDA GORE
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES
12-25-2011

This instrument was prepared by
Norma Delucca
Main Street Plaza 1000
Suite 310
Voorhees, NJ  08043


VMP-6A(OH) (0510)

Page 15 of 15

Initials

Form 3036   1/01
CitiMortgage 3.2.11.06 V9

10654   1700

NON-CONFORMING DOCUMENT
ADDITIONAL RECORDING FEE
( ORC 317.114 )

Wayne Cootes
Hamilton County Recorders Office
Doc #: 09-0162579 Type: AM
Filed: 12/10/09 07:58:50 AM $36.00
Off.Rec.: 11309 00855 F 3 117

b1130900855Fb

Return To:
REIMER, LORBER AND ARNOVITZ
2450 EDISON BLVD.
TWINSBURG, OH 44087

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, Mortgage Electronic Registration Systems, Inc.** whose address is c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368-2240, does hereby sell, assign, transfer and set over unto CitiMortgage, Inc., whose address is 1000 Technology Drive, O'Fallon, MO 63368-2240, a certain mortgage from RACHEL A. EVERETT, SINGLE to CITIMORTGAGE, INC., dated SEPTEMBER 17, 2007, recorded 09/19/07, in Instrument Number 07-0136208, in the office of the HAMILTON County Recorder, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon, and secured by the following real estate:

AS PER LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc.**, has set its hand this 2 December 2009.

* Mortgage Electronic Registration Systems Inc as nominee for.
** As nominee for Citimortgage Inc.

Mortgage Electronic Registration
Systems, Inc**

By: _____
Aaron Menne, Vice President

11309    855

STATE OF  MISSOURI

SS.

COUNTY OF ST CHARLES


Before me, a Notary Public in and for said County and State, personally appeared Aaron Menne, Vice President, of Mortgage Electronic Registration Systems, Inc., who acknowledged the signing thereof to be their free and voluntary act and deed and the free act and deed of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, and affixed my official seal on the day and year last ~~aforesaid~~.


Notary Public

DENNIS J. LUECKE
Notary Public - Notary Seal
State of Missouri
St. Charles County
Commission #08672763
My Commission Expires 11/04/2012


This instrument was prepared by:

GINA WEINAND
First American
1000 Technology Drive, O'Fallon, MO  63368-2240

11309     856

Situate in Section 16, Delhi Township, Hamilton County, State of Ohio, and being more particularly described as follows:

Beginning at a point in the center line of Hillside Avenue at the southwest corner of Lot 34 of P. Zinn's Subdivision of Anderson Ferry as recorded in Plat Book 4, page 296, Records of Hamilton County, Ohio; thence south 69 degrees 07' east a distance of 44.25 feet to a point; thence south 69 degrees 26' east a distance of 46.96 feet to a spike; which spike is the true place of beginning of this description; thence on a line parallel to and 93 feet east of the west line of said Lot 34 of P. Zinn's Subdivision of Anderson Ferry, north 25 degrees 07' east a distance of 102.18 feet to an iron pipe; thence south 32 degrees 37' east a distance of 176.50 feet to a pike in the center line of Hillside Avenue; thence north 69 degrees 26' west a distance of 144.32 feet to a spike, the place of beginning, forming a triangular tract of land.

Avenue, 93 feet and extending northwardly to the top of the hill and known as the west 93 feet of Lot No. 34 of Peter Zinn's Subdivision of Anderson Ferry, shown in Plat Book 4, pages 296 and 297 of the Hamilton County, Ohio Plat Records.

TRACT III: 540-80-32
Situate in Section 16, Town 3, Fractional Range 1, Miami Purchase, Delhi Township, Hamilton County, State of Ohio, and being the easterly portion of Lot No. 6 North of Hillside Avenue, of the Trustee Section Subdivision, recorded in Deed Book No. 76, page 311, Hamilton County Records, and said portion being more particularly described as follows:

Beginning at a point where the center line of Hillside Avenue intersects the west line of Peter Zinn's Subdivision, a plat of said subdivision recorded in Plat Book 4, pages 296 and 297, Hamilton County Records; thence northwardly along the west line of Peter Zinn's Subdivision, seven hundred and thirty-nine and 25/100 (739.25) feet to the north-east corner of said Lot No. 6; thence in a northeastwardly direction along the north line of said Lot No. Six (6), one hundred and twenty-nine (129) feet; thence southwardly parallel to the west line of Peter Zinn's Subdivision, eight hundred and eighteen and 95/100 (818.95) feet to a point in the center line of Hillside Avenue; thence Eastwardly along the center line of Hillside Avenue one hundred and ten (110) feet to the place of beginning.



Situate in Section 16, Delhi Township, Hamilton County, State of Ohio, and being more particularly described as follows;

Beginning at a point in the center line of Hillside Avenue at the southwest corner of Lot 34 of P. Zinn's Subdivision of Anderson Ferry as recorded in Plat Book 4, page 296, Records of Hamilton County, Ohio; thence south 59 degrees 07' west a distance of 44.25 feet to a point; thence south 69 degrees 24' east a distance of 44.94 feet to a spike; which spike is the true place of beginning of this description; thence on a line parallel to and 93 feet east of the west line of said Lot 34 of P. Zinn's Subdivision of Anderson Ferry, north 25 degrees 07' east a distance of 102.14 feet to an iron pipe; thence south 32 degrees 37' east a distance of 270.59 feet to a pike in the center line of Hillside Avenue; thence north 69 degrees 24' west a distance of 144.32 feet to a spike, the place of beginning, forming a triangular tract of land.

Avenue, 93 feet and extending northwardly to the top of the hill and known as the west 93 feet of Lot No. 34 of Peter Zinn's Subdivision of Anderson Ferry, shown in Plat Book 4, pages 296 and 297 of the Hamilton County, Ohio Plat Records.

TRACT III: 540-80-33 51(A)
Situate in Section 16, Town 3, Fractional Range 1, Miami Purchase, Delhi Township, Hamilton County, State of Ohio, and being the easterly portion of Lot No. 6 North of Hillside Avenue, of the Trustees Section Subdivision, recorded in Deed Book No. 76, page 311, Hamilton County Records, and said portion being more particularly described as follows:

Beginning at a point where the center line of Hillside Avenue intersects the west line of Peter Zinn's Subdivision, a plat of said subdivision recorded in Plat Book 4, pages 296 and 297, Hamilton County Records; thence northwardly along the west line of Peter Zinn's Subdivision, seven hundred and thirty-nine and 25/100 (739.25) feet to the northeast corner of said Lot No. 6; thence in a northwestwardly direction along the north line of said Lot No. Six (6), one hundred and twenty-nine (129) feet; thence southwardly parallel to the west lien of Peter Zinn's Subdivision, eight hundred and eighteen and 95/100 (818.95) feet to a point in the center line of Hillside Avenue; thence Eastwardly along the center line of Hillside Avenue one hundred and ten (110) feet to the place of beginning.

$P\mathcal{E}.$

Wayne Coates
Hamilton County Recorders Office
Doc #: 12-0082664 Type: AM
Filed: 07/02/12 09:40:15 AM  $36.00
Off.Rec.: 12056   00641   F   3   203

*12056D0641F*

Nationstar L#:
Investor L#:

When Recorded Return To:
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

Contact Federal National Mortgage Association for this instrument c/o Nationstar Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067, telephone # 877-372-0512, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO., 63368, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described MORTGAGE with all interest secured thereby, all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 350 Highland Drive, Lewisville, TX 75067, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said MORTGAGE executed by: RACHEL A EVERETT (current owner) and recorded on 09/19/2007 in the record of mortgages Volume 10654, Page 1685, and/or Instrument # in the office of the Recorder of HAMILTON, Ohio.

More particularly described as follows (if needed), to wit:
SEE EXHIBIT "A" ATTACHED

IN WITNESS WHEREOF, the undersigned has hereunto set its corporate hand by its proper officer on 06/___12_/2012 (MM/DD/YYYY).

CITIMORTGAGE, INC.

By: _____
DERRICK WHITE
VICE PRESIDENT

form5/FRMOHH1

12056   641

Nationstar L
Investor L#:

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on 06/ 12 /2012 (MM/DD/YYYY), by DERRICK
WHITE as VICE PRESIDENT for CITIMORTGAGE, INC., who, as such VICE PRESIDENT being authorized
to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally
known to me.

OH

_____
MIRANDA AVILA
Notary Public - State of FLORIDA
Commission expires: 08/22/2014

Notary Public, State of Florida
Miranda Avila
My Commission  EE019063
Expires 08/22/2014

Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

[C]   FORMS\FRMOHH1

12056     642

'EXHIBIT A'

BEGINNING AT A POINT IN THE CENTER LINE OF HILLSIDE AVENUE AT THE SOUTHWEST
CORNER OF LOT 34 OF P. ZINN'S SUBDIVISION OF ANDERSON FERRY AS RECORDED IN PLAT
BOOK 4, PAGE 296, RECORDS OF HAMILTON COUNTY, OHIO; THENCE SOUTH 69 DEGREES 07'
EAST A DISTANCE OF 44.25 FEET TO A POINT; THENCE SOUTH 69 DEGREES 24' EAST A
DISTANCE OF 48.96 FEET TO A SPIKE; WHICH SPIKE IS THE TRUE PLACE OF BEGINNING OF THIS
DESCRIPTION; THENCE ON A LINE PARALLEL TO AND 93 FEET EAST OF THE WEST LINE OF
SAID LOT 34 OF P. ZINN'S SUBDIVISION OF ANDERSON FERRY, NORTH 25 DEGREES 07' EAST A
DISTANCE OF 102.18 FEET TO AN IRON PIPE; THENCE SOUTH 32 DEGREES 37' EAST A DISTANCE
OF 170.50 FEET TO A PIKE IN THE CENTER LINE OF HILLSIDE AVENUE; THENCE NORTH 69
DEGREES 24' WEST A DISTANCE OF 144.32 FEET TO A SPIKE, THE PLACE OF BEGINNING,
FORMING A TRIANGULAR TRACT OF LAND.  AVENUE, 93 FEET AND EXTENDING
NORTHWARDLY TO THE TOP OF THE HILL AND KNOWN AS THE WEST 93 FEET OF LOT NO. 34
OF PETER ZINN'S SUBDIVISION OF ANDERSON FERRY, SHOWN IN PLAT BOOK 4, PAGES 296 AND
297 OF THE HAMILTON COUNTY, OHIO PLAT RECORDS.  TRACT III: 540-80-32 SITUATE IN
SECTION 16, TOWN 3, FRACTIONAL RANGE 1, MIAMI PURCHASE, DEHLI TOWNSHIP, HAMILTON
COUNTY, STATE OF OHIO, AND BEING THE EASTERLY PORTION OF LOT NO. 6 NORTH OF
HILLSIDE AVENUE, OF THE TRUSTEES SECTION SUBDIVISION RECORDED IN DEED BOOK NO.
76, PAGE 311, HAMILTON COUNTY RECORDS, AND SAID PORTION BEING MORE
PRACTICULARLY DESCRIBED AS FOLLOWS:  BEGINNING AT A POINT WHERE THE CENTER
LINE OF HILLSIDE AVENUE INTERSECTS THE WEST LINE OF PETER ZINN'S SUBDIVISION, A
PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK 4, PAGES 296 AND 297, HAMILTON
COUNTY RECORDS; THENCE NORTHWARDLY ALONG THE WEST LINE OF PETER ZINN'S
SUBDIVISION, SEVEN HUNDRED AND THIRTY-NINE AND 25/100 (739.25) FEET TO THE
NORTH-EAST CORNER OF SAID LOT NO. 6; THENCE IN A NORTHWESTWARDLY DIRECTION
ALONG THE NORTH LINE OF SAID LOT NO. SIX (6), ONE HUNDRED AND TWENTY-NINE (129)
FEET; THENCE SOUTHWARDLY PARALLEL TO THE WEST LIEN OF PETER ZINN'S SUBDIVISION,
EIGHT HUNDRED AND EIGHTEEN AND 95/100 (818.95) FEET TO A POINT IN THE CENTER LINE OF
HILLSIDE AVENUE; THENCE EASTWARDLY ALONG THE CENTER LINE OF HILLSIDE AVENUE
ONE HUNDRED AND TEN (110) FEET TO THE PLACE OF BEGINNING.

\* 201527801382 \*

| DATE:<br>10/05/2015 | DOCUMENT ID<br>201527801382 | DESCRIPTION<br>FICTITIOUS NAME/ORIGINAL FILING<br>(NFO) | FILING<br>39.00 | EXPED<br>100.00 | PENALTY<br>.00 | CERT<br>.00 | COPY<br>.00 |
|---|---|---|---|---|---|---|---|

**Receipt**

This is not a bill. Please do not remit payment.

CORPORATION SERVICE COMPANY
DEANNE E. SCHAUSEIL
50 W. BROAD STREET
COLUMBUS, OH 43215

# STATE OF OHIO
## CERTIFICATE

### Ohio Secretary of State, Jon Husted

**2434003**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**MR. COOPER**

and, that said business records show the filing and recording of:

Document(s)                                                      Document No(s):

**FICTITIOUS NAME/ORIGINAL FILING**                               **201527801382**

**Effective Date: 10/02/2015**

Expiration Date:        10/02/2020

NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
DALLAS, TX 75019



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the
Secretary of State at Columbus, Ohio
this 5th day of October, A.D. 2015.

*Jon Husted*

Ohio Secretary of State

[Space Above This Line For Recording Data]

Loan #:

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 6th day of July, 2010, between RACHEL A EVERETT ("Borrower") and CitiMortgage, Inc. ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 09/19/07 and recorded in Book or Liber na, at page(s) na, or Document No. 07-0136208, of the Hamilton County Records of (Name of Records) Ohio and (2) the Note, bearing the same date as, and secured by, the (County and State, or other Jurisdiction) Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 4520 HILLSIDE AVENUE, CINCINNATI, OH 45233-1613, (Property Address) the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 07/01/10, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $84,744.64, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, as set forth in the payment schedule below. Interest will begin to accrue on the modified Loan as of 07/01/10. If on 10/01/37, (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Amount* | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|-------|--------------|---------------------------|----------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-Term | 5.625% | 07/01/2010 | $507.14 | $270.55, May adjust periodically | $777.69, May adjust periodically | 08/01/2010 | 327 |



LOAN WORKOUT PLAN

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.



**OPTIONAL PROVISIONS**

**Optional Provisions:**

I represent that I received a discharge of personal liability in a Chapter 7 bankruptcy after the execution of the Loan Documents. Based on this representation, Lender agrees that I have no personal liability for the debt under the Loan Documents. However, I understand that my bankruptcy discharge of personal liability did not affect the Lender's lien on the Property. In other words, any right the Lender has under the Loan Documents and applicable law to foreclose on the Property if I am in default has not been discharged in bankruptcy. I accordingly understand that if I make no additional payments or otherwise default, the Lender could seek to foreclose on the Property but the Lender could not seek to hold me personally liable. I have chosen to execute this Agreement in order to have the option to make voluntary payments on the debt under the Loan Documents, as modified by the terms of this Agreement.

Add the following provision for MERS loans: Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered with MERS who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the Loan Documents.

**LOAN WORKOUT PLAN**

In Witness Whereof, the Lender and I have executed this Plan.

Kevin Walker

CitiMortgage, Inc.

By

Kevin Walker

Date

<<
>>
<<Mortgage Electronic Registration Systems, Inc.>>
<<Nominee for Lender>>

RACHEL A EVERETT

Date 7/15/2010

8/11/2010

LEE KEE ROBINSON, SR.
My Commission Expires
May 20, 2013
St. Louis County
Commission #09462618

SEAL
1995

12772 · 00409

Wayne Coates
Hamilton County Recorders Office
Doc #: 14-0124169 Type: MT
Filed: 12/11/14 10:14:46 AM $76.00
Off.Rec.: 12772   00409   F   8   114

&gt;1277200409Fh

Return to:
Document Recording Services
P.O. Box 3008.
Tallahassee, FL 32315-3008

Parcel ID Number: 540-80-32

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: September 19, 2007              Loan No:
Original Loan Amount: $78,000.00                          Investor Loan No.
New Money: $3,661.56                                      MIN Number:

NON-CONFORMING DOCUMENT
ADDITIONAL RECORDING FEE
( ORC 317.114 )

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 5th day of November, 2014, between
RACHEL EVERETT ("Borrower") and NATIONSTAR MORTGAGE LLC, whose address is 350
HIGHLAND DRIVE, LEWISVILLE, TX 75067 ("Lender"), and Mortgage Electronic Registration Systems,
Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument"), dated September 17, 2007 and recorded in Book/Liber OR 10654,
Page 01685, Instrument No: 07-0136208, of the Official Records (Name of Records) of HAMILTON
County, OH (County and State, or other Jurisdiction) and (2) the Note, bearing the same date as, and
secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at
         4520 HILLSIDE AVENUE, CINCINNATI, OH 45233,
                        (Property Address)
the real property described being set forth as follows:

See Exhibit "A" attached hereto and made a part hereof;

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 4/14)
8300a 08/14                                                                              (page 1 of 7)

12772    00410

follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of November 1, 2014, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$81,799.73**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of **Lender**. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.500%**, from **November 1, 2014.** Borrower promises to make monthly payments of principal and interest of U.S. **$367.74**, beginning on the **1st** day of **December, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.500%** will remain in effect until principal and interest are paid in full. If on **November 1, 2054** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument      Form 3179 1/01 (rev. 4/14)
8300a 06/14                                                                                                      (page 2 of 7)

12772    00411

shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee, of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(g) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

12772    00412

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6.  In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law; Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8.  This Agreement modifies an obligation secured by an existing security instrument recorded in HAMILTON County, OH, upon which all recordation taxes have been paid.  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $78,138.17.  The principal balance secured by the existing security instrument as a result of this Agreement is $81,799.73, which amount represents the excess of the unpaid principal balance of this original obligation.



LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument    Form 3179 1/01 (rev. 4/14)
8300n 08/14                                                                  (page 4 of 7)

12772    00413

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
RACHEL EVERETT  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Ohio

County of ___HAMILTON___

The foregoing instrument was acknowledged before me, a Notary Public on

___11/18/2014___ by

RACHEL EVERETT.

_____
(Signature of notarial officer)

___Personal Banker___
(Title or rank)

_____
(Serial number, if any)

My commission expires : ___4/18/2016___

Jeffrey Lee Browning
Notary Public, State of Ohio
My Commission Expires 04-18-2016





LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 4/14)
8300a 08/14                                                                        (page 5 of 7)

12772   00414

NATIONSTAR MORTGAGE LLC

By: _____   (Seal) - Lender
Name: _____Azra Habibija_____
Title: _____Assistant Secretary_____

__11/25/14__
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____
The State of TX

County of ___Denton___

Before me __Adrienne Danielle Meyer__ Notary Public
___(name/title of officer) on this day personally appeared
_____Azra Habibija_____ , the ____Assistant Secretary____ of
Nationstar Mortgage LLC

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged   to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this __25th__ day of __November__, A.D. __2014__.

_____
Signature of Officer
Notary Public

_____
Title of Officer

My Commission expires : __4/20/16__

ADRIENNE DANIELLE MEYER
Notary Public, State of Texas
My Commission Expires
April 20, 2016

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300s 08/14

Form 3179 1/01 (rev. 4/14)
(page 5 of 7)

12772    00415

Azra Habibija                          11/25/14

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title:    Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Denton_____ /           Notary Public

Before me _____Adrienne Danielle Meyer_____ / _____ (name/title of officer) on this day personally appeared

_____Azra Habibija_____ , the _____Assistant Secretary_____ of

Mortgage Electronic Registration System, Inc.

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 25th day of November , A.D. 2014.

_____
Signature of Officer

Notary Public

Title of Officer

My Commission expires : 4/20/16

This Document Prepared By:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

ADRIENNE DANIELLE MEYER
Notary Public, State of Texas
My Commission Expires
April 20, 2016

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300a 08/14

Form 3179 1/01 (rev. 4/14)
(page 7 of 7)

12772   00416

## Exhibit "A"

Loan Number: ▉▉▉▉▉

Property Address: 4520 HILLSIDE AVENUE, CINCINNATI, OH 45233

Legal Description:
THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN SECTION 16, DELHI TOWNSHIP,
HAMILTON COUNTY, STATE OF OHIO, AND BEING MORE PARTICULARLY DESCRIBED AS
FOLLOWS: BEGINNING AT A POINT IN THE CENTER LINE OF HILLSIDE AVENUE AT THE
SOUTHEAST CORNER OF LOT 34 OF P. ZIANS SUBDIVISION OF ANDERSON FERRY AS
RECORDED IN PLAT BOOK 4, PAGE 296, RECORDS OF HAMILTON COUNTY, OHIO, THENCE
SOUTH 69 DEGREES 07 MINUTES EAST A DISTANCE OF 44.25 FEET TO A POINT; THENCE
SOUTH 69 DEGREES 24 MINUTES EAST A DISTANCE OF 48.96 FEET TO A SPIKE; WHICH
SPIKE IS THE TRUE PLACE OF BEGINNING OF THIS DESCRIPTION; THENCE ON A LINE
PARALLEL TO AND 93 FEET EAST OF THE WEST LINE OF SAID LOT 34 OF P. ZINNS
SUBDIVISION OF ANDERSON FERRY, NORTH 25 DEGREES 07 MINUTES EAST A DISTANCE OF
102.18 FEET TO AN IRON PIPE; THENCE SOUTH 32 DEGREES 37 MINUTES EAST A
DISTANCE OF 170.50 FEET TO A PIKE IN THE CENTER LINE OF HILLSIDE AVENUE;
THENCE NORTH 69 DEGREES 24 MINUTES WEST A DISTANCE OF 144.32 FEET TO A SPIKE,
THE PLACE OF BEGINNING, FORMING A TRIANGULAR TRACT OF LAND. AVENUE, 93 FEET
AND EXTENDING NORTHWARDLY TO THE TOP OF THE HILL AND KNOWN AS THE WEST 93 FEET
OF LOT NO. 34 OF PETER ZINNS SUBDIVISION OF ANDERSON FERRY, SHOWN IN PLAT BOOK
4, PAGES 296 AND 297 OF THE HAMILTON COUNTY, OHIO PLAT RECORDS. TRACT III:
540-80-32. SITUATE IN SECTION 16, TOWN 3, FRACTIONAL RANGE 1, MIAMI PURCHASE,
DELHI TOWNSHIP, HAMILTON COUNTY, STATE OF OHIO, AND BEING THE EASTERLY PORTION
OF LOT NO. 6 NORTH OF HILLSIDE AVENUE, OF THE TRUSTEES SECION SUBDIVISION,
RECORDED IN DEED BOOK NO. 76, PAGE 311, HAMILTON COUNTY RECORDS, AND SAID
PORTION BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A POINT
WHERE THE CENTER LINE OF HILLSIDE AVENUE INTERSECTS THE WEST LINE OF PETER
ZINNS SUBDIVISION, A PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK 4, PAGES
296 AND 297, HAMILTON COUNTY RECORDS;  THENCE NORTHWARDLY ALONG THE WEST LINE
OF PETER ZINNS SUBDIVISION, SEVEN HUNDRED AND THIRTY NINE AND 25/100 (739.25)
FEET TO THE NORTH EAST CORNER OF SAID LOT NO. 6; THENCE IN A NORTHWESTWARDLY
DIRECTION ALONG THE NORTH LINE OF SAID LOT NO. SIX (6), ONE HUNDRED AND TWENTY
NINE (129) FEET; THENCE SOUTHWARDLY PARALLEL TO THE WEST LIE OF PETER ZINNS
SUBDIVISION, EIGHT HUNDRED AND EIGHTEEN AND 95/100(818.95) FEET TO A POINT IN
THE CENTER LINE OF HILLSIDE AVENUE; THENCE EASTWARDLY ALONG THE CENTER LINE OF
HILLSIDE AVENUE ONE HUNDRED AND TEN (110) FEE TO THE PLACE OF BEGINNING.




Exhibit A Legal Description Attachment 1 11/12

FIDUCIARY DEED, Statutory Form No. 31-S   (Reprinted 3/2003)   Registered in U.S Patent and Trademark Office
PF-3149   Anderson publishing co. cincinnati, ohio 45202
540-80-10,32,43

# Deed of Executor, Administrator, Trustee, Guardian, Receiver or Commissioner*

RICHARD H. NEYER, ADMINISTRATOR

by the power conferred by   ESTATE OF JAMES NEYER PROBATE CASE #2007-001449 and every other power.
for   1.00   valuable consideration paid, grant(s) with fiduciary covenants, to
RACHEL A. EVERETT UNMARRIED

for their joint lives, remainder to the survivor of them, whose tax-mailing addresses are

1000 TECHNOLOGY DRIVE, O'FALLON, MO   63368

the following REAL PROPERTY: Situated in the County of   HAMILTON   in the State
of Ohio and in the   CITY   of CINCINNATI   ;

SEE ATTACHED LEGAL DESCRIPTION....

SUBJECT TO EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY

EXCEPTING TAXES AND ASSESSMENTS IF ANY DUE AND PAYABLE IN JANUARY 2008 AND THEREAFTER
WHICH THE GRANTEE HEREIN ASSUMES AND AGREES TO PAY.

PROPERTY MOST COMMONLY KNOWN AS:   4520 HILLSIDE AVENUE
CINCINNATI, OHIO   45205

Rebecca Pree Groppe
Hamilton County Recorders Office
Doc #: 07-0136207 Type: DE
Filed: 09/19/07 03:13:45 PM   $28.00
Off.Rec.: 10654   01683   F W44 2   375

Prior Instrument Reference:   BK 6628 PG 511   of the Deed Records of   HAMILTON
County, Ohio.
**EXECUTED** this   17TH   day of   SEPTEMBER.   2007

ESTATE OF JAMES NEYER

BY: _Richard H. Neyer_ Administrator
RICHARD H. NEYER, ADMINISTRATOR

STATE OF OHIO   )
   ) SS:
COUNTY OF   HAMILTON   )

**BE IT REMEMBERED**, That on this   17TH   day of   SEPTEMBER   2007   (Year) before me,
the subscriber, a   NOTARY PUBLIC   In and for said state, personally came,
ESTATE OF JAMES NEYER BY RICHARD H. NEYER, ADMINISTRATOR   the Grantor(s) in the
foregoing deed, and acknowledged the signing thereof to be   HIS   voluntary act and deed.
**IN TESTIMONY THEREOF**, I have hereunto subscribed my name and affixed my   OFFICIAL   seal
on the day and year last aforesaid.

NOTARY PUBLIC
This instrument was prepared by   ROBERT W. OETTEL, ATTORNEY AT LAW

1 Executor of the Will of, Administrator of the Estate of, Trustee under, Guardian of, Receiver of, Commissioner.
2 Description of land or interest therein, and encumbrances, reservations, and exceptions, taxes and assessments if any.
Auditor's and Recorder's Stamps

*See Sections 5302.09 Ohio Revised Code.

RHONDA GORE
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES
12-25-2011

Duly Willobee
Hamilton County Auditor
Sales amount:   78,000

10654   1683

540-80-10
43

Situate in Section 16, Delhi Township, Hamilton County, State of Ohio, And ;
being more particularly described as follows:

Beginning at a point in the center line of Hillside Avenue at the southwest
corner of Lot 34 of P. Zinn's Subdivision of Anderson Ferry as recorded in
Plat Book 4, page 296, Records of Hamilton County, Ohio; thence south 89
degrees 07' east a distance of 44.25 feet to a point; thence south 59 degrees
34' east a distance of 49.96 feet to a spike; which spike is the true place of
beginning of this description; thence on a line parallel to and 93 feet east
of the west line of said Lot 34 of P. Zinn's Subdivision of Anderson Ferry,
north 29 degrees 07' east a distance of 262.16 feet to an iron pipe; thence
south 32 degrees 37' east a distance of 370.50 feet to a pike in the center
line of Hillside Avenue; thence north 59 degrees 34' west a distance of 115.32
feet to a spike, the place of beginning, forming a triangular tract of land.

Avenue, 93 feet and extending northwardly to the top of the hill and known as
the west 93 feet of Lot No. 34 of Peter Zinn's Subdivision of Anderson Ferry,
shown in Plat Book 4, pages 296 and 297 of the Hamilton County, Ohio Plat
Records.

TRACT III; 540-80-32

Situate in Section 16, Town 3, Fractional Range 1, Miami Purchase, Delhi
Township, Hamilton County, State of Ohio, and being the easterly portion of
Lot No. 6 North of Hillside Avenue, of the Trustees Bacion Subdivision,
recorded in Deed Book No. 76, page 311, Hamilton County Records, and said
portion being more particularly described as follows:

Beginning at a point where the center line of Hillside Avenue intersects the
west line of Peter Zinn's Subdivision, a plat of said subdivision recorded in
Plat Book 4, pages 296 and 297, Hamilton County Records; thence northwardly
along the west line of Peter Zinn's Subdivision, seven hundred and thirty-nine
and 25/100 (739.25) feet to the north-east corner of said Lot No. 6; thence
in a northwestwardly direction along the north line of said Lot No. Six (6),
one hundred and twenty-nine (129) feet; thence southwardly parallel to the
west line of Peter Zinn's Subdivision, eight hundred and eighteen and 95/100
(818.95) feet to a point in the center line of Hillside Avenue; thence
Eastwardly along the center line of Hillside Avenue one hundred and ten (110)
feet to the place of beginning.

DESCRIPTION ACCEPTABLE
HAMILTON COUNTY ENGINEER

Tax Map - _____

CAGIS - _____

10654    1684